UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL MUTUAL INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> USEONG INTERNATIONAL, LTD., GENERAL ) <br> ELECTRIC COMPANY, AND ELECTRIC ) <br> INSURANCE COMPANY, ) <br> Defendant; ) <br> ) <br> USEONG INTERNATIONAL, LTD., ) <br> Counter-Plaintiff ) <br> v. ) <br> ) <br> CENTRAL MUTUAL INSURANCE COMPANY, ) <br> Counter-Defendant; ) <br> ) <br> GENERAL ELECTRIC COMPANY, AND ) <br> ELECTRIC INSURANCE COMPANY, ) <br> Counter-Plaintiff, ) <br> v. ) <br> ) <br> CENTRAL MUTUAL INSURANCE COMPANY, ) <br> Counter-Defendant. ) | No. 04 C 8206 <br><br> Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Central Mutual Insurance Company ("Central") filed this diversity lawsuit seeking a declaration that it does not owe a duty to defend or indemnify its insured, Useong International, Ltd. ("UI"), in an arbitration proceeding against General Electric Company ("GE") and Electric Insurance Company ("EIC"). Central also seeks a declaration that GE and EIC are not named insureds under UI's policy and therefore are not entitled to a defense or indemnification. Central's motion for judgment on the pleadings is currently before this Court. For the following

reasons, we grant Central's motion for judgment on the pleadings.

## RELEVANT FACTS

### I. Central's Insurance Policies

Central and UI[1] entered into a Business Owner's Policy ("BOP") on three occasions. The first BOP was for the policy period beginning March 1, 2002 and ending March 1, 2003. Inexplicably, it appears that this policy was executed between the parties on February 23, 2004, long after the policy period ended. The second BOP was executed on January 28, 2003 and covered the period beginning March 1, 2003 and ending March 1, 2004. The last policy was executed on December 17, 2003 and covered the period beginning March 1, 2004 and ending March 1, 2005.[2] All of these policies have identical language and coverages that reads in part:

> We [Central] will pay those sums that the insured [UI] becomes legally obligated to pay as damages because of "bodily injury" or "property damage," "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . .

(R. 32, Central's Exs., Ex. 1, Central's Insurance Policies at 1 of 12.) Each BOP also contains a section stating that the insureds' "rights and duties under this policy may not be transferred without [Central's] written consent except in the case of death of an individual Named Insured." (*Id.* at 4 of 4.) Besides UI, the only other named insured listed in the policy is Mercury Investments, Inc., which is not a party to this litigation. (*Id.* at 1 of 1.)

---

[1] UI is a wholly owned subsidiary of Useong Electro Mechanics ("UEM") which is a Korean corporation with its principal place of business in Korea. UI, an Illinois corporation, is responsible for marketing, promoting, and selling the allegedly defective UEM water valves that are at issue in the underlying arbitration.

[2] Central's cancellation of the 2004-2005 policy became effective on May 9, 2004.

2

## II. The 2002 Claims Management and Litigation Agreement and Resulting Arbitration

In October of 2002, UI entered into an agreement with GE and GE's insurer, EIC, to settle claims resulting from property damage caused by allegedly defective UEM/UI water valves installed into GE refrigerators. This Claims Management and Litigation Agreement ("CMLA") states that UI would pay "55% of the settlement or judgment paid by EIC to resolve the Claim or Lawsuit, plus 55% of EIC's costs and expenses relating to the adjustment or defense of the Claim or Lawsuit . . . ." (*Id.*, Ex. 3, CMLA.) Attached to the CMLA are 150 claims that were pending when the parties signed the CMLA. The CMLA further provides that UI would pay 55% of any claims that arise before December of 2006. (*Id.*)

On January 29, 2004, GE notified Central of the CMLA and the property damage claims resulting from the leaking UEM/UI water valves. (*Id.*, Ex. 5, 1/29/04 Letter.) UI failed to make any payments under the CMLA and GE and EIC filed a notice of arbitration on March 23, 2004. Central received notice of the arbitration on March 29, 2004. (*Id.*, Ex. 2, Notice of Arbitration.) On April 1, 2004, GE and EIC filed an amended notice of arbitration. Central received notice on May 4, 2004. (*Id.*, Ex. 4, Am. Notice of Arbitration; *id.*, Ex. 16, 5/4/04 Letter.)

On April 27, 2004, UI provided Central with its notice of defenses and counterclaims filed in response to the notice of arbitration. (*Id.*, Ex. 15, 4/27/04 Fax.) On June 25, 2004, Central sent UI a letter stating that it had no duty to defend or indemnify UI in the arbitration with GE and EIC. (*Id.*, Ex. 17, 6/25/04 Letter.) On August 11, 2004, GE filed a second amended notice of arbitration which UI forwarded to Central on August 17, 2004. (*Id.*, Ex. 19, 8/17/04 Letter; *id.*, Ex. 20, Second Am. Notice of Arbitration.) After exchanging a series of letters with UI, on December 10, 2004, Central denied any duty to defend or indemnify UI with respect to the

underlying arbitration. (*Id.*, Ex. 23, 12/10/04 Letter.)

On December 20, 2004, Central filed suit in this Court seeking a determination of its rights and obligations under the policy. (R. 1, Central's Compl.) UI counterclaimed, arguing that Central had a duty to defend UI and acted in bad faith in refusing to do so. (R. 7, UI's Compl.) GE and EIC also counterclaimed, arguing that Central has a duty to indemnify UI for any award granted in the underlying arbitration and also that Central must pay a portion of the arbitration award to GE or EIC because they are named insureds. (R. 5, GE/EIC Compl.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c)[3] permits a party to move for judgment based on the pleadings alone. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The pleadings consist of the complaint, the answer, and any exhibits which are incorporated into the pleadings for purposes of a Rule 12(c) motion. *Id.* at 452-53 (stating that exhibits may include any written instruments such as affidavits, letters, contracts, and loan documentation).

Where the parties do not present any material outside of the pleadings, as is the case here, a Rule 12(c) motion is subject to the same standard as motions brought under Rule 12(b)(6): the motion will only be granted if the moving party "clearly establishes that no material issue of fact

---

[3]Rule 12 (c) provides:
> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

remains to be resolved and that he or she is entitled to judgment as a matter of law." *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987); *Knoll Pharm. Co. v. Automobile Ins. Co. of Hartford et. al.*, 152 F. Supp. 2d 1026, 1031-32 (N.D. Ill. 2001). In resolving the motion, however, the Court must accept as true all facts alleged by the nonmovant and must draw all reasonable inferences in the nonmovant's favor. *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 178 (7th Cir. 1986).

## ANALYSIS

### I. Central's Duty to Defend

The main issue before this Court is whether Central has a duty to defend UI in an arbitration that arose during the policy period. The duty to defend is well-established in Illinois.[4] To determine whether the insurer has a duty to defend, the Court must look at the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy. *Outboard Marine Corp. v. Liberty Mut. Ins. Comp.*, 607 N.E.2d 1204, 1212 (Ill. 1992); *Ill. Emasco Ins. Co. v. Northwestern Nat'l Cas. Co.*, 785 N.E.2d 905, 908 (Ill. App. Ct. 2003). "If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." *United States Fid. & Guar. Co. v. Wilkin Insulation et. al.*, 578 N.E.2d 926, 930 (Ill. 1991).

The underlying complaint must be liberally construed. *Id.* at 930. If several theories of recovery are alleged against the insured, the duty to defend arises even if only one theory is

---

[4] "A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits." *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). Because there is no choice of law provision in the BOPs, Illinois law applies.

5

within the potential coverage of the policy. *Id.* Furthermore, the Court must not focus on the legal labels that the underlying plaintiff attaches to the insured's conduct. *Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 991 F. Supp. 1024, 1030 (N.D. Ill. 1998). Instead, the focus is on "whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Id.*

Any doubts or ambiguities regarding coverage must be resolved in favor of the insured. *Ill. Emasco*, 785 N.E.2d at 908. "A provision is ambiguous if it is subject to more than one reasonable interpretation." *Wilkin*, 578 N.E.2d at 930. Where a policy provision is clear and unambiguous, its language must be given its "plain, ordinary and popular" meaning. *Id.*

Applying these principles to the present case, this Court concludes that Central has a duty to defend UI in the underlying arbitration under the 2004-2005 BOP. The BOP provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of ... 'bodily injury' [and] 'property damage.'" (R. 32, Central's Exs., Ex. 1, Central's Policies at 1 of 12.) The CMLA governs the resolution of "any claim or lawsuit against GE or EIC involving injury, damage, or economic loss resulting or claimed to result in whole or in part from any actual or alleged failure of or defect in any [UI] valve." (*Id.*, Ex. 3, CMLA at 1.) Thus, the conduct alleged in the arbitration—failure to provide the agreed upon remuneration for property damage—arguably falls within the category of wrongdoing that the BOP covers. *Winklevoss*, 991 F. Supp. at 1030. The policy further provides that Central "will have the right and duty to defend the insured against any 'suit' seeking those damages . . . " and defines suit as "[a]n arbitration proceeding in which such damages are claimed . . . ." (R. 32, Central's Exs., Ex. 1, Central's Policies at 11 of 12.) Consequently, the claims arising from the CMLA as well as the

subsequent arbitration both fall within the purview of the BOP.

The arbitration also occurs during the BOP's coverage period. The BOP covers "an 'occurrence' or an offense which may result in a claim" that occurs in the "coverage territory... during the policy period." (*Id.* at 1 of 12.) The coverage territory is the "United States of America (including its territories and possessions), Puerto Rico, and Canada...." (*Id.* at 9 of 12.) The CMLA was signed by UI, EIC, and GE, all American companies, and governed by Kentucky law. (*Id.*, Ex. 3, CMLA at 2.) The coverage period under the 2004-2004 BOP was from March 1, 2004 until May 9, 2004. Central received the first notice of the arbitration on April 12, 2004 and notice of UI's defense and counterclaims on April 27, 2004. (*Id.*, Ex. 15, 4/27/04 Fax.) Because the notice of arbitration was delivered prior to this date, then the BOP's coverage was triggered before the cancellation went into effect. *See, e.g., The Roman Catholic Diocese of Joliet, Inc. v. Interstate Fire Insurance Co.*, 685 N.E.2d 932, 939 (7th Cir. 1997) (holding that "where... the negligent supervision of a priest manifests itself as abuse in multiple policy periods... each policy's coverage is triggered by the first instance of abuse occurring during its period of coverage."). Accordingly, we find that Central has a duty to defend UI in the underlying arbitration against GE and EIC under the 2004-2005 BOP.

## II. Known Loss Doctrine

The next issue this Court must consider is whether Central's duty to defend is excused by the known loss doctrine. Insurance, by its very nature, involves protection against contingent risks. Therefore, the known loss doctrine allows insurers to defeat claims relating to any undisclosed losses that were already realized at the policy's inception. In *Outboard Marine*, the Supreme Court of Illinois explained the principles of the doctrine:

> If the insured knows or has reason to know, when it purchases a CGL [comprehensive general liability] policy, that there is a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss. Where the insured has evidence of a probable loss when it purchases a CGL policy, the loss is uninsurable under that policy (unless the parties otherwise contract) because the 'risk of liability is no longer unknown.' Therefore, the insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio*, unless the parties intended the known loss to be covered.

607 N.E.2d at 1210 (citations omitted). It is the insurer's burden to show that a known loss exists. *Id.* at 1212. In order to sustain this burden, Central has to prove that UI knew or had reason to know at the time it purchased its insurance policy that claims related to its water valves had been made or would be made and the likely extent of that exposure. *Allianz Ins. Corp. v. Guidant Corp.*, 355 Ill. App. 3d 721, 734 (Ill. App. Ct. 2005).

UI, GE, and EIC entered into the CMLA in October of 2002. (R. 32, Central's Exs., Ex. 3, CMLA at 1.) The CMLA provided that UI would reimburse EIC for 55% of the cost for all claims arising from defective UI/UEM water valves. Central did not have notice of UI's potential liability under the CMLA until January 2004, one month after it entered into the 2004-2005 BOP with UI.[5] (*Id.* at Ex. A.) This Court concludes that when UI signed the CMLA, it had knowledge as a matter of law that it would suffer a probable loss. *Outboard Marine*, 607 N.E.2d at 1211. Furthermore, UI did not disclose this potential liability to Central when it signed its 2004-2005 insurance policy.

---

[5] UI claims that its copy of the 2004-2005 BOP has a February 2004 issue date, which is contrary to the December 17, 2003 issue date on the 2004-2005 BOP Central submitted with the pleadings. Since Central was notified of the CMLA on January 29, 2004, UI argues that its copy of the 2004-2005 BOP shows that Central may have known about the claims prior to issuing the policy. However, UI has not submitted a copy of this document and it is not a part of the pleadings. As a result, the Court cannot consider this argument.

In *Outboard Marine*, an Environmental Protection Agency ("EPA") administrative order provided that the discharge of pollutants by the insured presented "an imminent and substantial danger to the health and welfare of persons living adjacent to and utilizing the waters of Lake Michigan." *Id.* at 1210-11. The court held that upon the receipt of the EPA administrative order the insured had knowledge as a matter of law that there was a substantial probability that claims would be made against it for the pollution and any insurance procured after its receipt does not cover this "known loss." *Id.* at 1211.

In this case, UI had greater certainty of its future liability than was present in *Outboard Marine*. When UI agreed to the CMLA, there were claims already pending against GE and EIC which UI agreed to reimburse. The settlement of these claims was part of the CMLA. (R. 32, Central's Exs., Ex. 4, Second Am. Notice of Arbitration.) UI agreed to pay 55% of all claims arising before December of 2006. (*Id.*) No amount of discovery can refute the fact that UI knew that it would incur some loss when it signed the agreement.

In the arbitration proceeding against GE and EIC, UI is challenging the validity of the CMLA. UI argues that its challenge to the CMLA is proof that it knew of *a risk* that there may be a loss but did not necessarily know that there was a *substantial probability* of a loss. (UI's Reply to Mot. to Dismiss at 18.) In other words, UI argues that because the validity of the CMLA is unsettled, it could not have known that it was likely to sustain a substantial loss under the CMLA. Once again, the authority relied on by UI is distinguishable on the facts.

In *Missouri Pacific Railroad Company v. American Home Assurance Company*, the court rejected the insurer's argument that the insured knew that there was a substantial probability that it would sustain a loss from employee claims of hearing loss. 675 N.E.2d 1378 (Ill. App. Ct.

9

1997). The insurer argued that the insured's knowledge of the loss was apparent from a letter generated by the insured's general counsel. 675 N.E.2d at 1382. The general counsel's letter began by noting that "over the years we, in the claim area, have been able to detect trends in certain areas" and predicted that hearing loss "is definitely going to be one of the big claim areas of the future." *Id.* He further recommended that a policy be put in place to protect employees from hearing loss in order to decrease the risk of liability. *Id.* The court rejected the insurer's argument that the known loss doctrine should apply to bar the insured's claim, finding that "such speculation and discussion of a 'trend' do not satisfy the *Outboard* test of having knowledge of a substantial probability that a loss will occur." *Id.*

In this case, UI entered into a binding agreement to settle current and future claims. This was not a situation where UI's general counsel predicted that there was an industry trend regarding the effectiveness of water valves generally; speculated that there would be a risk of increased litigation in the future; or recommended that UI take protective or preemptive measures to decrease the risk of liability. The increase in UI's liability and risk exposure with regard to the valves had become a reality more than a year before the start of the 2004-2005 BOP. In fact, more claims were filed after UI signed the CMLA. (R. 32, Central's Exs., Ex. 14, 4/13/04 Letter.) Based on the claims then filed and its commitment to resolve all claims filed prior to December 2006, UI had a specific understanding about the extent and scope of its liability that exceeds the substantial probability standard.

UI's argument that the CMLA does not constitute a known loss because the agreement's validity is at issue in the underlying arbitration also raises a policy concern. At the time the 2004-2005 BOP was issued, Central had no notice of UI's potential liability under the CMLA. It

10

would be poor policy for us to force an insurer to pay for a loss that it had not assumed, simply because the insured later questions the validity of its own pre-policy agreement to voluntarily accept responsibility for these same undisclosed losses. *See Crete-Monee Sch. Dist. 201-U v. Ind. Ins. Comp.*, 1997 WL 305310, * 2 (N.D. Ill. May 30, 1997) ("the known loss doctrine essentially reforms the contract to exclude the known loss, apparently under the presumption that no reasonable insurer would assume such a 'risk'"). UI's knowledge that there was a virtual certainty that it would it incur a loss as early as 2002 precludes coverage under the 2003-2004 and 2004-2005 BOPs. Accordingly, we hold that Central has met its burden in proving that the known loss doctrine applies to the 2003 and 2004 BOPs.

UI also tries to argue that even if coverage is precluded under the 2003-2004 and 2004-2005 BOPs, this does not prevent coverage under the 2002-2003 BOP. It is well established, however, that the duty to defend is not triggered until the insurer receives actual notice of the underlying litigation. *The Cincinnati Cos. v. West Am. Ins. Co.*, 701 N.E.2d 499, 502-03 (Ill. 1998) (defining actual notice as "notice sufficient to permit the insurer to locate and defend the lawsuit"); *Dearborn Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 719 N.E.2d 1092, 1096-97 (Ill. App. Ct. 1999). Since Central did not receive notice of the underlying claims and the CMLA until January of 2004, this effectively precludes any argument that the 2002-2003 BOP obligates Central to defend UI in the arbitration. As a result, Central's duty to defend UI in the underlying arbitration under the 2002-2003, 2003-2004, or 2004-2005 BOPs is excused.

### III. Central's Duty to Indemnify

Our finding that the known loss doctrine excuses Central's duty to defend under the 2003-2004 and 2004-2005 BOPs may require a finding that Central has no duty to indemnify UI

under these policies as well. *Am. Motorists Ins. Comp., v. Stewart Warner Corp.*, 01 C 2078, 2004 WL 1146707, * 9 (N.D. Ill. May 17, 2004); *Crum & Forster Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993). This is because "the duty to defend is broader than the duty to indemnify." *Id.* GE and EIC argue in their brief that the duty to indemnify should be viewed separately from the duty to defend based on the language of the policy. Coverage A of the 2003-2004 and 2004-2005 BOPs state that Central agrees to "pay those sums that the insured becomes legally obligated to pay as damages." (R. 32, Central's Exs., Ex. 1, Central's Policies at 1 of 12.) It further states that Central will "defend the insured against any 'suit' seeking damages." *Id.* Based on this language, GE and EIC argue that "the policy's 'plain language' makes clear that the duty to defend only applies to a 'suit' and that the duty to indemnify 'does not require a lawsuit to begin that obligation.'" (R. 40, GE and EIC's Opp'n to Mot. to Dismiss at 9.)

The duty to defend and the duty to indemnify can be treated coextensively for purposes of the 2003-2004 and 2004-2005 BOPs because application of the known loss doctrine means that those policies were never triggered. *Int'l Envtl. Corp. v. Nat'l Fire Ins. Comp. et. al.*, 860 F. Supp. 511, 516-17 (N.D. Ill. 1994). The known loss doctrine is akin to "a condition precedent . . . [and] [i]f an insured fails to meet certain pre-conditions, then the insurance policy does not take effect." *Id.* Here, the pre-condition was notification to Central of the CMLA and its underlying claims prior to the inception of the policy. That did not occur. If the insurance policy is never triggered, then there can be no duty to defend nor a duty to indemnify under the policy. *Id.* Accordingly, we hold that there is no duty to indemnify under the 2003-2004 and 2004-2005 BOPs.

Central also has no duty to indemnify under the 2002-2003 BOP. The policy provides that: "You [the insured] must see to it that we [Central] are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (R. 32, Central's Exs., Ex. 1, Central's Policies at 9 of 12.) Illinois courts interpret the phrase "as soon as practicable" in the notice provision of an insurance policy to mean that the insured must notify the insurer of an occurrence or offense within a reasonable time. *Casualty Indem. Exchange v. Chicago*, 651 F. Supp. 467, 473 (N.D. Ill. 1986). Whether the notice is given in a reasonable time generally depends on all the facts and circumstances of each case. *Id.* However, "where the facts are undisputed, the reasonableness of notice to an insurer by its insured is a question of law." *Montgomery Ward & Co. v. Home Ins. Co.*, 753 N.E. 2d 999, 1004 (Ill. App. Ct. 2001). It is undisputed by all parties that UI entered into the CMLA in October of 2002 and that GE notified Central of the CMLA in January of 2004. Given the circumstances which led UI to agree to the CMLA, we hold that the greater than 15 month delay in notification of these claims does not qualify as a reasonable time period within the meaning of the policy. *Id.* at 474 (holding that a delay in notification of nine and one-half months and three and one-half months was unreasonable); *see also Casualty Indem. Exch. v. Crete*, 731 F.2d 457, 459 (7th Cir. 1984) (holding that notice given eighteen months after an accident was unreasonably late).

UI also did not provide any excuse for the more than 15 month delay in notifying Central of the dispute which led to the CMLA. Consequently, in determining if Central has a duty to indemnify we do not have to consider whether the delay in fact prejudiced Central. *Montgomery Ward & Co.*, 753 N.E. 2d at 1005 ("Lack of prejudice to the insurer is a factor to be considered only where the insured has a good excuse for the late notice or where the delay was relatively

13

brief."). Nevertheless, we note that a timely notification of the underlying dispute may have led Central to negotiate the settlement terms differently than those provided by the CMLA so Central was in fact prejudiced by the notification delay. Under these circumstances, we hold that UI, GE, and EIC had the duty of notifying Central about the agreement sooner than notice was actually tendered. *Casualty Indem. Exch.*, 731 F.2d at 458 ("Under Illinois law, if the insurer receives timely notice of an occurrence from a third party, this actual notice may satisfy the policy requirement."); *see also Ill. Founders Ins. Co. v. Barnett*, 710 N.E.2d 28, 32 (Ill. App. Ct. 1999). Accordingly, we hold that Central has no duty to indemnify UI under the 2002 BOP.

## IV. Bad Faith Claim

UI argues that Central's decision not to defend UI in the underlying arbitration was made in bad faith, in violation of Section 155 of the Illinois Insurance Code ("section 155"). Section 155 states in pertinent part:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [certain penalties] . . .

215 ILCS 5/155 (2005). Because this Court has held that Central has no duty to defend or indemnify UI, UI is not entitled to any relief under Section 155. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002) ("Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy."); *see also Hermitage Ins. Co. v. Action Marine, Inc.*, 816 F. Supp. 1280, 1286 (N.D. Ill. 1993) (holding that an action under Section 155 cannot be maintained when an insurer rightly denies

coverage).

## V. Counterclaim by GE and EIC

GE and EIC claim that the issue of whether they are named insureds under the policy is a question of fact not suitable for resolution at this stage of the proceedings. Thus, they argue we cannot determine the status of GE and EIC with regard to these policies. (R. 40, GE and EIC's Opp'n to Mot. to Dismiss at 9.) We disagree. Before us are three separate policies, none of which name GE and EIC as insureds. (R. 32, Central's Exs., Ex. 1, Central's Policies at 1 of 1.) It is also undisputed that GE and EIC do not qualify as insureds within the meaning of the policy. (*Id.* at 7 of 12.) In the pleadings there is mention of certificates of insurance that name GE and EIC as insureds, but no certificates of insurance were submitted with the pleadings. Normally, the absence of the certificates of insurance from the pleadings would make it difficult to dispose of this claim at this stage of the proceedings. *See Am. Country Ins. Comp. v. Kraemar Bros., Inc.*, 699 N.E.2d 1056, 1060 (Ill. App. Ct. 1998) (looking at both the certificates of insurance and the policy to determine the scope of coverage).

In this case, however, the absence of the certificates from the pleadings is not dispositive. If Central has no duty to defend or indemnify UI under the BOPs, then it cannot owe any duty to GE and EIC as named insureds under the same policy based on the same claims. The policy is clear: "If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." (R. 32, Central's Exs., Ex. 1, Central's Policies at 1 of 2.) If GE and EIC are insureds under the policy, then they are barred from recovery for the

15

same reasons UI is not entitled to a defense or indemnification. They knew of the claims, but did not disclose them to Central during the 2002-2003 policy period or prior to the inception of the 2003-2004 or 2004-2005 BOPs. In the alternative, if they are not named insureds, then they have no rights under the BOP in any event. Consequently, we grant Central's motion for judgment on the pleadings against GE and EIC as well.

## VI. Attorneys' Fees

Central requests attorneys' fees and other costs as a result of this litigation. The well established rule is that "a successful party in a lawsuit is not entitled to attorneys' fees absent statute or agreement." *Westchester Fire Ins. Co. v. G. Heileman Brewing Co.*, 321 Ill. App. 3d 622, 637 (Ill. App. Ct. 2001) (*citing Kerns v. Engelke*, 76 Ill. 2d 154 (1979)). In the absence of vexatious behavior by the insurer (in which case an award of attorney fees is allowed by Section 155), an insured may not recover attorneys' fees incurred in bringing a declaratory judgment action against the insurer to establish coverage. *See Waitzman v. Classic Syndicate, Inc.*, 271 Ill. App. 3d 246, 256 (Ill. App. Ct. 1995). Because there is no corresponding statutory provision for the recovery of attorneys' fees by insurers under Section 155, it follows that an insurer may not recover for bringing a declaratory judgment action unless the policy so provides. Here, there is no such provision in the policy. We hold that each party will pay their own fees.

## CONCLUSION

For the reasons set forth above, we grant Central's motion for judgment on the pleadings in its entirety. (R. 31-1.) Because we have found that the known loss doctrine applies, we need not reach the question of whether or not the policy exclusions apply to bar the defense and/or indemnification of the underlying arbitration. The Clerk of the Court is directed to enter judgment in favor of Central with respect to all the claims contained in the lawsuit.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Date: October 3, 2005**